UNITED STATES of America, Appellee,

v.

Richard Dunham HAMMOND, Jr., Appellant.

No. 80–1439.

United States Court of Appeals, Eighth Circuit.

Submitted Dec. 12, 1980.

Decided March 4, 1981.

Daniel M. Scott, Federal Public Defender, District of Minnesota, Minneapolis, Minn., for appellant.

Richard E. Vosepka, Asst. U. S. Atty. (argued), Thomas K. Berg, U. S. Atty., District of Minnesota, Minneapolis, Minn., Betsy De La Vega, Legal Intern, for appellee.

Before HEANEY, ROSS and McMILLIAN, Circuit Judges.

HEANEY, Circuit Judge.

Appellant Richard Dunham Hammond, Jr., was charged with violating 21 U.S.C. § 841(a)(1) (possession of controlled substance with intent to distribute) and 21 U.S.C. § 846 (conspiracy). He was tried jointly with his co-conspirator William Roger Boone and a jury returned a verdict of guilty on both counts. We affirm.

The evidence presented at trial concerned two sales of cocaine arranged by appellant Hammond—one on December 5, 1979, and the other on January 10, 1980. The events leading to these sales are detailed in the record. Hammond admittedly spent several months in and around his home in a suburb of St. Paul, Minnesota, trying to find a source from which to purchase illegal drugs. During this time, he made contact with several Drug Enforcement Administration agents, who working undercover, were posing as drug dealers. The record contains numerous tape recordings of conversations between the agents and Hammond in which Hammond expresses his desire to purchase and sell illegal drugs, primarily cocaine. The culmination of these discussions occurred on December 5, 1979, when Hammond and two DEA agents arrived in Miami, Florida, where Hammond paid $19,000 to purchase 383 grams of cocaine from co-conspirator Boone.

Hammond was arrested upon his return to Minnesota with the cocaine. He was released without being charged, however, and began working with the DEA agents to set up another cocaine deal with Boone. These efforts led to Boone's arrest on January 10, 1980, shortly after he had arranged to sell approximately four pounds of cocaine to a DEA agent in Minnesota.

Hammond, a member of the Ramsey County Sheriff's Reserves, admits that he participated in the scheme to purchase cocaine but contends that he did so in order to break up a drug ring. His defense, therefore, was based on lack of criminal intent. His sole ground for appeal is that the prosecutor essentially took the question of intent away from the jury by misstating the law in his closing rebuttal argument. Specifically, Hammond objects to the following statement of the Assistant United States Attorney:

[The] motive instruction is very, very important for you to understand. The Judge is going to point out to you that motive is not one of the essential elements of the government's proof. He will distinguish for you the difference between motive and intent. Motive is the reason why you do something. Intent is your actual willingness to do an act. * * *

* * * [T]hat's a terribly important distinction based on the defense [counsel for the defense] has presented to you because even if you believe Mr. Hammond, even if you believe that he really wasn't doing this for his own profit, that he was really engaged in some citizen's law enforcement efforts * * * even if you believe it, as you will hear the instructions, it avails Mr. Hammond's knowing [sic] because all that would amount to would be a good motive.

Hammond argues that the prosecutor's remarks were prejudicial because they directly affected the jury's ability to evaluate the only element of the crime that remained in dispute: specific intent. Hammond asserts that the trial court failed to correct the error either at the time of the statement or in the instructions to the jury.

In our view, the prosecutor's statement of the law was misleading. It suggested that motive had no relevance to the issues in this case, when in fact motive may have been very relevant to a determination of whether Hammond knowingly committed the acts

charged in the indictment and *purposely intended to violate the law by so doing.*

Nevertheless, we are persuaded that the error does not require reversal of Hammond's conviction. When the prosecutor concluded the remarks quoted above, Hammond's attorney objected. The district judge commented, "I will tell them the law." When the prosecutor made further references to his view of Hammond's motives, defense counsel objected again. The judge then responded, "You will have your opportunity to make objections."

While these admonitions by the court were not sufficient to counteract the prosecutor's misstatement of the law, they did alert the jury that the law would be properly stated by the court at a later time. The court's instructions to the jury included the following references to intent:

The crimes charged in this case are serious crimes which require proof of specific intent before a defendant can be convicted. Specific intent, as the term implies, means more than the general intent to commit the act. To establish specific intent, the government must prove that the defendants knowingly did an act which the law forbids *purposely intending to violate the law* ; and such intent may be determined from all of the facts and circumstances surrounding the case.

Intent ordinarily may not be proved directly because there is no way scrutinizing the operations of the human mind, but you may infer the intent of the defendant from the surrounding circumstances. You may consider any statements made, any acts done or admitted by the defendants and any other facts and circumstances which indicate the state of mind of the defendants.

You may consider it reasonable to draw the inference and find that a person intends the natural and probable consequences of his acts knowingly done or knowingly admitted.

As I have stated, it is entirely up to you to decide the facts from the evidence.

\* \* \* \* \* \*

Now, with reference to Mr. Hammond, if I understand it, the defendant himself, and the defendant's lawyer Mr. Scott, he takes the position—they take the position that in each instance this requirement of showing the criminal intent, the purposefulness of the act was not satisfied because Mr. Hammond was engaged in his own citizen's pursuit of the satisfaction of law enforcement; but it was urged upon you by his lawyer directly and by Mr. Hammond indirectly that he never had the criminal intent to violate the law. And in connection with this I'm going to give you an instruction now with reference to the difference between intent and motive, an instruction which was summarized in part by the attorney for the government.

I advise you that intent and motive should never be confused. Motive is what prompts a person to act. Intent refers only to the state of mind with which the act is done. Personal advancement and financial gain are two recognized motives for much of human conduct. These laudable motives or others may prompt one person to do voluntary acts of good, and others to do voluntary acts of crime.

Good motive alone is never a defense where the act done or admitted is a crime. So the motive of the accused is immaterial except insofar as evidence of motive may aid determination of the state of mind or intent of the defendant. [Emphasis added.]

The last two paragraphs of the above-quoted instruction are somewhat confusing but, when read together with the underlined portion of the first paragraph, correctly state the law and were sufficient to present that element of the offenses to the jury. Moreover, although the judge concluded his instruction by stating, "Counsel may now invite my attention to any misstatements or errors and make objections to any instructions I have given or any instructions I have failed to give," Hammond's lawyer made no objection or request for additional instructions. Indeed, he had

earlier endorsed most of the instructions given.[1]

Under these circumstances, failure to give additional correcting instructions does not constitute prejudicial error. Accordingly, the conviction is affirmed.

---

1. The record shows that Hammond's attorney requested the instruction that was given on specific intent—nearly an exact recitation of the pattern instruction found in section 14.03 of E. Devitt & C. Blackmar, Federal Jury Practice and Instructions (1977). In a discussion with the court concerning the instructions to be given, Hammond's lawyer told the judge, "As long as 14.03 is there I'm happy, your honor."

In addition, in his closing argument Hammond's attorney specifically relied on the motive instruction that was later given by the court. He stated,

[The judge] is also going to tell you about motive. He is going to say good motive is no defense. He is going to tell you motive is immaterial. The motive my client had is immaterial except insofar as the evidence of motive may aid in the determination of the state of mind of my client or his intent.

There is not going to be technical legal argument. What I am talking about is intent. We are talking is he a drug dealer or isn't he? Did he purposely intend to violate the law or is he telling the truth, and that's what it all gets down to.